Paul Buchanan, OSB 940551
paul@baaslaw.com
Dezi Robb, OSB 151777
dezi@baaslaw.com
BUCHANAN ANGELI ALTSCHUL
& SULLIVAN LLP
921 SW Washington Street, Suite 516
Portland, OR 97205
Telephone: (503) 974-5015
Facsimile: (971) 230-0337

Attorneys for Plaintiff


## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| MICHAEL FESSER,<br><br>    Plaintiff,<br><br>    v.<br><br>THE CITY OF WEST LINN; TERRY TIMEUS, an individual; TONY REEVES, fka TONY POITRAS, an individual; MIKE BOYD, an individual; and MIKE STRADLEY, an individual.<br><br>    Defendants. | Civil No. 3:18-cv-01516-SB<br><br>**SECOND AMENDED COMPLAINT**<br><br>(42 U.S.C. § 1981 – Deprivation of Right to Make and Enforce Contracts and Deprivation of Full and Equal Benefit of the Law; 42 U.S.C. § 1983 – Violations of the First, Fourth and Fourteenth Amendments; False Arrest; False Imprisonment; Malicious Prosecution; Intentional Infliction of Emotional Distress; Defamation; 18 U.S.C. § 2511 – Wiretapping; ORS 133.721, *et seq.* – Unlawful Interception and Disclosure; Invasion of Privacy)<br><br>DEMAND FOR A JURY TRIAL<br><br>NOT SUBJECT TO MANDATORY ARBITRATION<br><br>Prayer Amount: $2,511,000<br><br>Filing Authority under ORS 21.160(1)(d): $834 |

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON, SUITE 516
PORTLAND, OREGON 97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

## INTRODUCTION

1.  This is an action for monetary, declaratory and injunctive relief, including attorneys' fees, costs and punitive damages upon motion, to redress violations of plaintiff's rights under 42 U.S.C. § 1981, 42. U.S.C. § 1983 in the nature of violations of the First, Fourth and Fourteenth Amendments of the United States Constitution, and to assert state common law claims for false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, defamation, and invasion of privacy, as well as unlawful surveillance activity in violation of ORS 133.721 and 18 U.S.C. § 2511 *et seq.*

## JURISDICTION

2.  This Court has jurisdiction over plaintiff's claims for monetary and other relief under 28 U.S.C. § 1331, federal question jurisdiction.  This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state claims arise from the same nucleus of operative facts as the federal claims.  The state claims are so related to the federal claims that they form part of the same case or controversy and would ordinarily be expected to be tried in one judicial proceeding.

## VENUE

3.  Venue is appropriate in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the underlying acts, omissions, injuries and related facts and circumstances giving rise to the present action primarily occurred in this judicial district.  Because a substantial part of the events and omissions giving rise to plaintiff's claims occurred within Multnomah and Clackamas counties, under LR 3-2(a), the Portland Division of the United States District Court for the District of Oregon is the appropriate divisional venue.

## PARTIES

4.  Plaintiff Michael Fesser ("Mr. Fesser" or "plaintiff"), an individual, is and was at all times material a resident of Portland, Oregon.  Plaintiff was employed full-time in Portland. Plaintiff is African American.

Page 2 – SECOND AMENDED COMPLAINT

5.   Defendant City of West Linn includes the West Linn Police Department ("WLPD"); the City of West Linn is a governmental entity that operates the WLPD which provides law enforcement for the City of West Linn, Oregon.

6.   Defendant Terry Timeus ("Chief Timeus"), an individual, was the chief of police of the West Linn Police Department from in or around 2005 to on or around October 31, 2017. Chief Timeus at all times relevant had final policy making authority at WLPD.

7.   Defendant Tony Reeves ("Sgt. Reeves") (fka Tony Poitras), an individual, was a detective with the West Linn Police Department until on or around March 1, 2018, when he was promoted to sergeant.

8.   Defendant Mike Boyd ("Sgt. Boyd"), an individual, was a detective with the West Linn Police Department at all relevant times, who has since been promoted to sergeant.

9.   Defendant Mike Stradley ("Lt. Stradley"), an individual, was a lieutenant with the West Linn Police Department at all relevant times.

10.  The City of West Linn, including WLPD, Chief Timeus, Sgt. Reeves, Sgt. Boyd and Lt. Stradley are referred to collectively herein as "the West Linn Defendants."

## GENERAL ALLEGATIONS

11.  Chief Timeus has for many years had a close personal friendship with the owner of a Portland business where plaintiff was employed during the period at issue in this Complaint. Chief Timeus' friend's business was located entirely within the City of Portland, well outside the boundaries of West Linn.  On information and belief, Chief Timeus' friend informed Chief Timeus of his growing concern that his employee, Mr. Fesser, might sue him as Mr. Fesser had raised complaints of race discrimination.

12.  Acting on the basis of his personal friendship with the owner of the Portland business where plaintiff was employed, and in an effort to assist the business owner in putting a stop to plaintiff's race discrimination complaints (and not any concern about criminal activity in West Linn), in late 2016 and/or early 2017, Chief Timeus instructed Sgt. Reeves to investigate Mr.

Page 3 – SECOND AMENDED COMPLAINT

Fesser and to build a case that Mr. Fesser was involved in employee theft from Chief Timeus'
friend's Portland business.  WLPD did not typically investigate or secure the arrest of individuals
alleged to be involved in employee theft outside of the City of West Linn.  Chief Timeus
instructed Lt. Stradley, who was also familiar with Chief Timeus' friend, to assist and oversee
Sgt. Reeves in this investigation.  The investigation culminated in an unlawful, extra-
jurisdictional and unwarranted surveillance operation in Portland at the business of Chief
Timeus' friend where Mr. Fesser was employed.

13.  As alleged herein, the West Linn Defendants betrayed the trust placed in them by the
citizens of West Linn and expended substantial official time and money acting as Chief Timeus'
personal posse to effectuate an unwarranted, illegal, racially-motivated surveillance, arrest and
detention of an African American Portland resident who was employed in the City of Portland
and had no relationship to the City of West Linn.

14.  At the direction of Chief Timeus, Sgt. Reeves attempted to secure statements from
individuals who were expressly acknowledged in text messages to be "dirty."  These text
messages can be found on both Chief Timeus' and Sgt. Reeves' phones.  In one such message on
Sgt. Reeves' phone, these individuals upon whom the West Linn Defendants sought to build
their case against Mr. Fesser are characterized as "dirty, shady fucks."  Sgt. Reeves hoped he
could get these individuals to provide statements or testimony to support the false claim that Mr.
Fesser was stealing from Chief Timeus' friend's Portland business.

15.  In attempting to secure these statements, the West Linn Defendants, upon
information and belief, made multiple false assertions and suggestions to these individuals to
cause them to believe that Mr. Fesser was engaged in employee theft from Chief Timeus'
friend's business.

16.  Acting at the behest of Chief Timeus, and with the approval of Lt. Stradley, Sgt.
Reeves also undertook an audio and visual surveillance operation at the Portland business with

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON., SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

the assistance of Sgt. Boyd and several civilians, which included unlawful audio surveillance of Mr. Fesser.

17.  Sgt. Reeves and Sgt. Boyd conducted the surveillance operation without a warrant or probable cause and in violation of Oregon and federal law during an auction that Mr. Fesser conducted as part of his regular duties at the Portland business on February 25, 2017.  The surveillance operation did not result in any evidence of wrongdoing as Mr. Fesser was not engaging in any improper conduct.

18.  Nevertheless, immediately following the auction, on the afternoon of February 25, 2017, Sgt. Reeves and Sgt. Boyd, with the participation of Portland Police officers, arrested Mr. Fesser in Portland, based on Sgt. Reeves' and Lt. Stradley's false representations to the Portland Police that the West Linn Defendants had "probable cause" for an arrest.

19.  Sgt. Reeves and Sgt. Boyd unlawfully arrested, detained and interrogated Mr. Fesser in Portland, outside their jurisdiction, without probable cause.  Sgt. Reeves and Sgt. Boyd also seized Mr. Fesser's belongings, including but not limited to his smartphone, personal papers, and attorney-client privileged communications between Mr. Fesser and his employment attorney regarding his concerns of racial discrimination in the workplace.  The officers told Mr. Fesser that they would hack into his smartphone and access the data and communications without his consent.

20.  Sgt. Reeves and Sgt. Boyd subjected Mr. Fesser to further interrogation and threats at the Stark Street police station in Portland.  Following the interrogation, the officers took Mr. Fesser to the Justice Center in Downtown Portland and had him incarcerated in a jail cell.

21.  Around midnight, Mr. Fesser was released on his own recognizance with no smartphone, only his wallet and information regarding a court arraignment the following Monday.  The ordeal lasted approximately eight hours.

22.  Although any purported concern about alleged employee theft at a Portland business should have been the sole province of the Portland Police, the West Linn Defendants acted

Page 5 – SECOND AMENDED COMPLAINT

outside their jurisdiction based on Chief Timeus' personal friendship and a shared racially discriminatory animus to attempt to build a pretextual, false and unfounded case against Mr. Fesser.

23.  The racist and unlawful nature of the West Linn Defendants' conduct was first revealed to Mr. Fesser in January 2018, when, in the course of civil litigation, information was produced and testimony provided that revealed the nature of the West Linn Defendants' activities related to Mr. Fesser.

24.  The evidence Mr. Fesser received in January 2018 revealed that the motivation behind the West Linn Defendants' investigation of Mr. Fesser was racial prejudice and a personal friendship with Chief Timeus.

25. The newly discovered evidence included text messages showing Sgt. Reeves jovially engaging in explicitly racist, sexual, homophobic and highly unprofessional banter throughout the course of his unlawful surveillance and investigation of Mr. Fesser.  In addition, the text messages revealed that the West Linn Defendants played an active part in seeking the termination of Mr. Fesser's employment.

26. The racial animus underlying the investigation and arrest is made plain in these documented exchanges that took place during the unwarranted surveillance effort.  The surveillance made clear that the business owner was correct that Mr. Fesser was voicing concern about racial discrimination in the workplace.  Officer Reeves and the WLPD responded to this confirmation by pushing to quickly arrest Mr. Fesser without a warrant in retaliation for his protected speech in order to keep Mr. Fesser from voicing additional, more formal, complaints of race discrimination.

27.  In one text exchange, Sgt. Reeves expressly advised that the arrest should happen swiftly so that it would occur before Mr. Fesser could further pursue his complaint of racial discrimination.  Sgt. Reeves asserted, "It's better that we arrest him before he makes the complaint [of race discrimination]. Then it can't be retaliation."

Page 6 – SECOND AMENDED COMPLAINT

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON., SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

28.  Sgt. Reeves further opined, without any knowledge of the basis for Mr. Fesser's concerns about racial discrimination, that what he called Mr. Fesser's effort to "play the race card" would not work.  Sgt. Reeves then sought to provide reassurance to the business owner that any legal claim of race discrimination Mr. Fesser might make against the business owner regarding the termination of plaintiff's employment would most likely be covered by insurance. When the business owner expressed misgivings about their surveillance and planned arrest, Sgt. Reeves stated: "I'm about to sue you for being a pussy."  Sgt. Reeves further assured the civilian that we are "doing the right thing."

29.  At another point near the beginning of the surveillance operation Sgt. Reeves stated, "fuck this I'm scared" and indicated he was calling off the operation, before proceeding anyway. Underscoring the fact that the surveillance operation was being performed due to Chief Timeus' relationship with the business owner, Sgt. Reeves joked that the Portland business-owner was "t-bagging the chief," an apparent reference to oral sex.

30.  The evidence Mr. Fesser received in January 2018 also shows that the West Linn Defendants knowingly acted outside of their jurisdiction in conducting their investigation and arrest.  Specifically, the text messages indicate that Sgt. Reeves planned to arrest, detain and interrogate Mr. Fesser in Portland – well outside the West Linn Defendants' jurisdiction, unless Mr. Fesser "lawyered up."  In another text message, Sgt. Reeves lamented that he was acting outside his jurisdiction.

31.  Text messages also demonstrate that Sgt. Reeves made multiple defamatory statements about plaintiff.  For example, Sgt. Reeves made false statements about Mr. Fesser in writing to Mr. Fesser's employer, including, "He is robbing you blind;" "Today his reign of terror ends;" and "Like he hasn't been in your pocket for years."

32.  While the business where the surveillance took place included warning notices that video surveillance cameras were in use, there were no notices posted indicating that audio surveillance was conducted on those premises.

Page 7 – SECOND AMENDED COMPLAINT

33. Nevertheless, Sgt. Reeves ensured that conversations occurring at the Portland business involving Mr. Fesser and others were surreptitiously monitored and recorded. Using an app known as "Swann View," and relying on the assistance of civilian personnel, Sgt. Reeves received real-time updates regarding the unlawful audio surveillance as it took place.

34. Immediately after the surveillance effort at the Portland auction where plaintiff was employed, Sgt. Reeves' texted "my game my rules!" Moments later, Sgt. Reeves and Sgt. Boyd with the assistance of the Portland Police secured the arrest of Mr. Fesser in public on a city street in Portland as Mr. Fesser was leaving work for the day.

35. Portland police records show that Portland Police officers some of whom, on information and belief, knew Lt. Stradley from his prior service as a Portland Police Officer with the Gang Enforcement Team, accepted without question the West Linn Defendants' assertions that there was probable cause to arrest Mr. Fesser. Upon information and belief, Lt. Stradley instructed Portland Police Officers to have Portland Police's Gang Enforcement Team assist the West Linn Defendants in arresting Mr. Fesser, even though the allegations against him were wholly unrelated to any suspected gang activity.

36. As he was being handcuffed, one of the Portland Police officers who knows Mr. Fesser from Mr. Fesser's years of doing ministry work in local prisons expressed his discomfort with the situation, stating, "Mike, this is not my call. I don't want to be here. We're just assisting West Linn."

37. On the following Monday, February 27, 2017, Sgt. Reeves called Mr. Fesser and instructed him to come to the West Linn Police Department to retrieve his belongings. Mr. Fesser had to travel to West Linn – a town to which he has no connection – to retrieve his personal possessions that the West Linn Defendants wrongfully seized, including the smartphone that they said they would hack.

38. At the West Linn Police Department, Sgt. Reeves and Sgt. Boyd informed Mr. Fesser that his employment at the Portland company where he had worked for approximately twelve

Page 8 – SECOND AMENDED COMPLAINT

years was terminated.  Mr. Fesser thought it was bizarre that West Linn police officers were empowered to summon him to West Linn and fire him from his job.

39.  The West Linn officers further instructed Mr. Fesser that he was not permitted to have any contact with his employer and was not permitted to return to his former place of work in Portland at any time.  They made further harassing commentary to Mr. Fesser and gave him back his smartphone along with some, but not all, of his personal items.  The officers did not return Mr. Fesser's attorney-client privileged correspondence and, on information and belief, proceeded instead to provide that confidential privileged correspondence to Chief Timeus' friend.

40.  On that same Monday, February 27, 2017, Mr. Fesser went to Multnomah County Circuit Court at the time designated in the papers he had received upon discharge from the jail.

41.  When Mr. Fesser checked in, a court clerk informed him that no charges were being pursued against him.  The clerk gave Mr. Fesser instructions on how to handle what the clerk referred to as a "no complaint" case, along with a number to call to determine if any complaint was being pursued by any alleged "victim."

42.  For several months Mr. Fesser regularly called in to the Multnomah County Circuit Court to see if the baseless criminal case against him was being pursued.  Each time he called in, the clerk informed him that the matter still was considered a "no complaint" case.  In the months following Mr. Fesser's arrest, upon information and belief, the West Linn Defendants conducted no further investigation into any alleged criminal activity regarding Mr. Fesser.  The investigation and arrest had apparently served their intended purpose.

43.  Meanwhile, upon information and belief, Sgt. Reeves made false statements about the criminal investigation and allegations against Mr. Fesser representing or implying that he engaged in criminal activity to public officials, including but not limited to employees of the Oregon Department of Motor Vehicles Business Regulation section and the Internal Revenue Service Criminal Investigation division.

Page 9 – SECOND AMENDED COMPLAINT

44.  Approximately seven months after his arrest, Mr. Fesser filed a lawsuit in Multnomah County Circuit Court against his former employer based on the termination of his employment and on the issues and concerns that were referenced in the attorney-client privileged communications that the West Linn Defendants had seized from him.

45.  Upon information and belief, immediately after Mr. Fesser filed his lawsuit, Mr. Fesser's former employer reached out to Sgt. Reeves and Lt. Stradley, who reactivated the West Linn Defendants' case against Mr. Fesser.

46.  Upon information and belief, shortly after the filing of the civil litigation referenced above, Mr. Fesser's former employer contacted Sgt. Reeves and Lt. Stradley about Mr. Fesser's employment-related lawsuit against him.  Sgt. Reeves and Lt. Stradley subsequently sought to prevail upon the Multnomah County District Attorney to bring criminal charges against Mr. Fesser.  This effort finally bore fruit in November 2017 when criminal charges were initiated.

47.  Shortly thereafter, on or around December 20, 2017, with Mr. Fesser's lawsuit against him still pending, Mr. Fesser's former employer contacted Sgt. Reeves and Lt. Stradley to ask why Mr. Fesser had not yet been arrested.  Lt. Stradley instructed Sgt. Reeves to author a flyer seeking assistance with the arrest of Mr. Fesser in an attempt to get Portland Police to serve the warrant.  On this same date, December 20, 2017, Officer Reeves emailed an employee of the Oregon Department of Motor Vehicles falsely stating, "Yeah for some reason [PPB] want[s] the gang team to arrest him."  On December 28, 2017, Lt. Stradley emailed the flyer to Portland Police officers, including an officer on the Gang Enforcement Team, seeking their assistance in the arrest of Mr. Fesser.

48.  Despite the West Linn Defendants' efforts, just a few months later, on March 23, 2018, the District Attorney dismissed the criminal charges against Mr. Fesser without taking any sustained action on the case and without any plea or conviction.

49.  The apparent lack of activity by the West Linn Defendants and all other law enforcement personnel in the months immediately following Mr. Fesser's arrest, coupled with

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON., SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

the apparent sudden renewed interest in the case following Mr. Fesser's filing of a lawsuit regarding racial discrimination and retaliation, underscores that the West Linn Defendants were acting on the basis of personal motivations in their efforts against Mr. Fesser, rather than any legitimate law enforcement concern, and in retaliation for his protected complaints of race discrimination.

50.  The West Linn Defendants' surveillance, arrest, incarceration and interrogation of Mr. Fesser without a warrant or probable cause and their pursuit of baseless criminal charges against Mr. Fesser were racially motivated, retaliatory, extra-jurisdictional and an egregious abuse of the power with which the police are entrusted.

51.  As a result of the West Linn Defendants' violation of Mr. Fesser's civil rights, Mr. Fesser has suffered reputational injury, emotional distress and economic damages.

52.  Mr. Fesser lost his job as a direct result of the West Linn Defendants' actions.  In addition, as a result of his arrest and threatened criminal prosecution, Mr. Fesser was prevented for months from performing his volunteer ministry work in the local prisons, where he has for years provided spiritual and personal support to inmates of all faiths and backgrounds who are attempting to become productive citizens.

53.  The West Linn Defendants' false and baseless criminal charges had a serious impact on Mr. Fesser's reputation within the communities in which he is known, including among the prison officials and Portland Police officers with whom he works in his ministry work, and in the retail business in which he continues to earn a living.

54.  Mr. Fesser provided formal written notice of his claims pursuant to the Oregon Torts Claims Act, ORS 30.275, on June 4, 2018.

**FIRST CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1981**
**Against all Defendants**

55.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55.

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON., SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

56.  The West Linn Defendants were acting under color of law when they committed the actions described herein.  Chief Timeus, Sgt. Reeves, Sgt. Boyd, and Lt. Stradley were acting in the course and scope of their duties in the actions alleged herein.

57.  In the alternative, Chief Timeus, Sgt. Reeves, Sgt. Boyd, and Lt. Stradley were acting outside the course and scope of their duties based on personal and retaliatory motives in undertaking the acts alleged herein.

58.  The West Linn Defendants violated plaintiff's right to make ang enforce contracts and acted on the basis of plaintiff's race to deprive him of the full and equal benefit of the law in violation of 42 U.S.C. § 1981.

59.  The West Linn Defendants knew or in the reasonable exercise of reasonable care should have known that their actions as alleged herein were unlawful, extra-jurisdictional, and unwarranted.

60.  The West Linn Defendants engaged in an unlawful surveillance effort, in part, to prevent plaintiff from asserting claims of racial discrimination and retaliation in his workplace.

61.  The West Linn Defendants advocated for plaintiff's unlawful termination, despite concerns about the likelihood of a race discrimination lawsuit.  The West Linn Defendants took it upon themselves to personally fire plaintiff from his job of twelve years and to forbid him from going onto the property of his former place of employment.

62.  The West Linn Defendants further violated 42 U.S.C. § 1981 by transgressing Mr. Fesser's First and Fourth Amendment rights in wrongfully surveilling, interrogating, and arresting him without probable cause, and discriminating against him based on his race, and retaliating against him for his protected speech.

63.  Through their actions, the West Linn Defendants intended to discriminate against plaintiff on the basis of plaintiff's race.

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON, SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

64.  The racial discrimination and retaliation practiced by the West Linn Defendants as alleged herein deprived plaintiff of the equal benefit of the law and interfered with plaintiff's employment contract.

65.  Plaintiff is entitled to a declaration that the West Linn Defendants violated 42 U.S.C. § 1981 by depriving plaintiff of his right to make and enforce contracts and acted on the basis of Mr. Fesser's race and protected speech to deprive him of the full and equal benefit of the law.

66.  As a direct and proximate cause of the West Linn Defendants' conduct, plaintiff has suffered and will continue to suffer economic losses including, but not limited to, lost income from future employment and impairment of future earning capacity, plus prejudgment interest, for which plaintiff seeks compensation in an amount to be proven at trial, but not less than $500,000.

67.  As a direct and proximate cause of the West Linn Defendants' conduct, plaintiff has suffered and will continue to suffer noneconomic damages in the form of injury to his reputation, emotional distress, anxiety, humiliation and embarrassment, and is entitled to an award of compensatory damages in the amount of $2,000,000.

68.  Because the West Linn Defendants engaged in egregious and malicious conduct and, in so doing, acted willfully, knowingly, intentionally, or with reckless disregard for plaintiff's constitutional and statutory rights, plaintiff reserves the right to move the court to amend the complaint to seek an award of punitive damages against the West Linn Defendants for the purpose of punishing these defendants and to deter them and others from such conduct in the future.

69.  Plaintiff is also entitled to recover his reasonable attorneys' fees, expert fees and costs pursuant to ORS 20.107 and 42 U.S.C. § 1988.

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON, SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

## SECOND CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983
### Against all Defendants

70.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 71.

71.  The West Linn Defendants were acting under color of law when they committed the actions described herein.  Chief Timeus, Sgt. Reeves, Sgt. Boyd, and Lt. Stradley were acting in the course and scope of their duties in the actions alleged herein.

72.  In the alternative, Chief Timeus, Sgt. Reeves, Sgt. Boyd, and Lt. Stradley were acting outside the course and scope of their duties based on personal motives in undertaking the acts alleged herein.

73.  The City of West Linn and its WLPD acted at the direction of Chief Timeus who maintained final policy making authority for the WLPD.

74.  The West Linn Defendants asserted false claims against plaintiff based on fabricated, incomplete, exaggerated, and/or mischaracterized information.

75.  The West Linn Defendants did not have a warrant or probable cause when they surveilled, investigated, arrested, interrogated, searched plaintiff, seized his personal belongings, and incarcerated him based on fabricated allegations of criminal conduct.

76.  The conduct of the West Linn Defendants violated Mr. Fesser's rights under the First, Fourth and Fourteenth Amendments of the United States.
Including without limitation in the following particulars:

    a.  The West Linn Defendants subjected plaintiff to illegal search and seizure without a warrant or probable cause in violation of the Fourth Amendment of the United States Constitution, as well as the Oregon Constitution and Oregon statutory law.

    b.  The West Linn Defendants unlawfully arrested plaintiff without a warrant or probable cause in violation of the Fourth Amendment of the United States Constitution.

Page 14 – SECOND AMENDED COMPLAINT

c.  In violation of the First Amendment of the United States Constitution, the West Linn Defendants surveilled and arrested plaintiff without a warrant due to his protected communications in which he expressed concerns about race discrimination in his workplace.

d.  The West Linn Defendants unlawfully imprisoned plaintiff in violation of the Fourth Amendment of the United States Constitution.

e.  The West Linn Defendants discriminated against plaintiff because of his race in violation of the Fourteenth Amendment and the Equal Protection Clause to the United States Constitution.

77.  Plaintiff is entitled to a declaration that the West Linn Defendants violated 42 U.S.C. § 1983 by depriving plaintiff of the rights guaranteed by the First, Fourth and Fourteenth Amendments of the United States Constitution.

78.  As a direct and proximate cause of the West Linn Defendants' conduct, plaintiff has suffered and will continue to suffer economic losses including, but not limited to, lost income from future employment and impairment of future earning capacity, plus prejudgment interest, for which plaintiff seeks compensation in an amount to be proven at trial, but not less than $500,000.

79.  As a direct and proximate cause of the West Linn Defendants' conduct, plaintiff has suffered and will continue to suffer noneconomic damages in the form of injury to his reputation, emotional distress, anxiety, humiliation and embarrassment, and is entitled to an award of compensatory damages in the amount of $2,000,000.

80.  Because the West Linn Defendants engaged in egregious and malicious conduct and, in so doing, acted willfully, knowingly, intentionally, or with reckless disregard for plaintiff's constitutional and statutory rights, plaintiff reserves the right to move the Court to amend the complaint to seek an award of punitive damages against the West Linn Defendants for the

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON., SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

purpose of punishing these defendants and to deter them and others from such conduct in the future.

81.  Plaintiff is also entitled to recover his reasonable attorneys' fees, expert fees and costs pursuant to ORS 20.107 and 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF
### False Arrest
### Against all Defendants

82.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 83.

83.  On February 25, 2017, the West Linn Defendants caused plaintiff to be arrested in Portland Oregon without a warrant or any other legal process and without probable cause or any objectively reasonable basis.

84.  The West Linn Defendants intended to cause plaintiff to be arrested based on false allegations and pretext.

85.  After plaintiff was arrested, he was unlawfully detained and incarcerated against his will, without a warrant or probable cause.

86.  Plaintiff did not engage in any unlawful conduct and the West Linn Defendants did not have reasonable suspicion or probable cause to believe that plaintiff had engaged in any illegal activity.

87.  Within the time allowed by ORS 30.275, on or about June 4, 2018, plaintiff presented a formal written notice of his claims to the West Linn Defendants for damages arising out of the facts and circumstances detailed above.

88.  As a direct and proximate cause of the West Linn Defendants' conduct, plaintiff was deprived of his liberty and has suffered and will continue to suffer noneconomic damages in the form of injury to his reputation, emotional distress, anxiety, humiliation and embarrassment, and is entitled to an award of compensatory damages in the amount of $2,000,000.

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON, SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

### FOURTH CLAIM FOR RELIEF
### False Imprisonment
### Against all Defendants

89.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 90.

90.  Plaintiff did not engage in any unlawful conduct and the West Linn Defendants did not have reasonable suspicion or probable cause to believe that plaintiff had engaged in any illegal activity.

91.  On February 25, 2017, Sgt. Reeves and Sgt. Boyd searched Mr. Fesser, his vehicle and his personal belongings and found no evidence of wrongdoing.

92.  Despite the absence of probable cause and despite the absence of jurisdiction, the West Linn Defendants caused plaintiff to be handcuffed taken into custody, detained, interrogated and imprisoned in a jail cell in Portland.

93.  Plaintiff was unlawfully arrested, detained, and interrogated by Sgt. Reeves and Sgt. Boyd, and imprisoned in a jail cell in Portland for a total of approximately eight hours.

94.  Neither Sgt. Reeves nor Sgt. Boyd, nor any other member of the West Linn or Portland Police Departments made any reasonable attempt to undertake their investigation, detention or interrogation in a lawful manner.

95.  Within the time allowed by ORS 30.275, on or about June 4, 2018, plaintiff presented a formal written notice of his claims to the West Linn Defendants for damages arising out of the facts and circumstances detailed above.

96.  As a direct and proximate cause of the West Linn Defendants' conduct, plaintiff was deprived of his liberty and has suffered and will continue to suffer noneconomic damages in the form of injury to his reputation, emotional distress, anxiety, humiliation and embarrassment, and is entitled to an award of compensatory damages in the amount of $2,000,000.

Page 17 – SECOND AMENDED COMPLAINT

## FIFTH CLAIM FOR RELIEF
### Malicious Prosecution
### Against all Defendants

97.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 98.

98.  At the direction of Chief Timeus, who was motivated to assist Mr. Fesser's former employer based on a personal relationship and by racial animus, the West Linn Defendants commenced an ongoing investigation and initiated criminal proceedings against Mr. Fesser based on false allegations of misconduct.  The West Linn Defendants had no reasonable belief or suspicion that Mr. Fesser was engaged in any unlawful conduct in West Linn and acted for no legitimate or lawful purpose.

99.  The West Linn Defendants engaged in the investigation of plaintiff and initiation of criminal proceedings against him in a conscious effort to prevent plaintiff from asserting his claims of racial discrimination and retaliation in the workplace.

100.  After Mr. Fesser filed a lawsuit against his former employer, who was also Chief Timeus' personal friend, the West Linn Defendants reopened plaintiff's case and, based on false representations and misleading evidence and witnesses acknowledged to be "dirty" sought to influence the Multnomah County District Attorney's Office to assert criminal charges against Mr. Fesser.

101.  The West Linn Defendants investigated and subjected plaintiff to criminal charges and proceedings, even though none of the alleged conduct took place in or near the City of West Linn.  The West Linn Defendants actions were motivated by Chief Timeus' personal interests and not any legitimate law enforcement interest, as well as by documented racially discriminatory animus.

102.  The West Linn Defendants maliciously and intentionally subjected Mr. Fesser to criminal charges based on evidence that was deliberately manipulated and fabricated, despite

Page 18 – SECOND AMENDED COMPLAINT

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON., SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

their apparent knowledge that their conduct was unlawful.  The West Linn Defendants also intentionally withheld evidence in their attempt to justify their unlawful conduct.

103.  The West Linn Defendants did not have probable cause nor objectively reasonable suspicion when they orchestrated the investigation, arrest, interrogation, search, and incarceration of Mr. Fesser.

104.  The criminal case against plaintiff was never pursued in earnest and was baseless. On March 23, 2018, the Multnomah County district attorney dismissed all criminal charges against Mr. Fesser without taking any sustained action on the case and without any plea or conviction.

105.  Within the time allowed by ORS 30.275, on or about June 4, 2018, plaintiff presented a formal written notice of his claims to the West Linn Defendants for damages arising out of the facts and circumstances detailed above.

106.  As a direct and proximate cause of the West Linn Defendants' conduct, plaintiff has suffered and will continue to suffer noneconomic damages in the form of injury to his reputation, emotional distress, anxiety, humiliation and embarrassment, and is entitled to an award of compensatory damages in the amount of $2,000,000.

## SIXTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### Against all Defendants

107.  Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 108.

108.  As detailed above, the West Linn Defendants engaged in outrageous, egregious, and unprivileged conduct, including but not limited to knowingly and intentionally causing plaintiff to be unlawfully detained, arrested, interrogated, and incarcerated by maliciously conspiring to assert a pretextual, false, and unfounded case against plaintiff outside their jurisdiction.

109.  The West Linn Defendants knowingly relied on witnesses that they acknowledged were "dirty" to make false statements concerning plaintiff.  Sgt. Reeves and Sgt. Boyd caused

Page 19 – SECOND AMENDED COMPLAINT

plaintiff to be arrested and detained in Multnomah County where they questioned him, threatened him, and seized his personal belongings including his attorney-client privileged correspondence and his smartphone.

110.  Sgt. Reeves and Sgt. Boyd told Mr. Fesser that they would break into his smartphone which they seized from him without any legal basis.

111.  The West Linn Defendants expressly advocated for Mr. Fesser's employer to fire him and to do so soon, before plaintiff might more formally complain about race discrimination asserting, as Sgt. Reeved did, "that way it can't be retaliation."

112.  Sgt. Reeves and Sgt. Boyd acted beyond their authority and abused their authority as West Linn Police Officers by summoning plaintiff, a resident of Portland, to West Linn the following Monday and informing him that he was fired from his job in Portland which he had held for approximately twelve years, and by instructing him that he was not permitted to go on or near his employer's property.  The officers also made further harassing commentary, referencing Lt. Stradley and suggesting that Lt. Stradley had on-going animosity toward Mr. Fesser.

113.  Sgt. Reeves also communicated falsely with several of plaintiff's former colleagues and customers indicating that plaintiff stole thousands of dollars from Chief Timeus' friend, intentionally defaming plaintiff and besmirching his reputation.  Sgt. Reeves also made defamatory statements about the criminal allegations against Mr. Fesser to multiple state officials, including but not limited to employees of the Oregon Department of Motor Vehicles Business Regulation section and the Internal Revenue Service Criminal Investigation division.

114.  The West Linn Defendants' conduct was racially motivated and discriminatory.

115.  The West Linn Defendants' betrayed the trust placed in them by the citizenry of West Linn to expend official time and money acting as Chief Timeus' personal posse outside their jurisdiction.  The West Linn Defendants' conduct as alleged herein was extreme, outrageous, and constituted an extraordinary transgression of the bounds of socially tolerable conduct.

Page 20 – SECOND AMENDED COMPLAINT

116.  The West Linn Defendants intended to inflict emotional distress upon plaintiff and were substantially certain their acts would cause plaintiff emotional distress.

117.  Within the time allowed by ORS 30.275, on or about June 4, 2018, plaintiff presented a formal written notice of his claims to the West Linn Defendants for damages arising out of the facts and circumstances detailed above.

118.  As a direct and proximate result of the West Linn Defendants' conduct, plaintiff was caused to incur severe emotional distress, mental anguish, degradation, and embarrassment and is entitled to an award of compensatory damages in the amount of $2,000,000.

## SEVENTH CLAIM FOR RELIEF
### Defamation
### Against all Defendants

119.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 120.

120.  The West Linn Defendants made multiple false and defamatory statements about Mr. Fesser that reflected on his character and his professional competence, diminished the esteem, respect, goodwill or confidence in which plaintiff is held and excited adverse, derogatory or unpleasant feelings or opinions against plaintiff.

121.  The West Linn Defendants published statements to third parties that assert or imply that Mr. Fesser engaged in theft and embezzlement at work, which constitutes defamation per se.

122.  During the course of their investigation, the West Linn Defendants published these statements to third parties, including but not limited to plaintiff's former employer, plaintiff's colleagues, and customers, and multiple state officials, including but not limited to employees of the Oregon Department of Motor Vehicles Business Regulation section and the Internal Revenue Service Criminal Investigation division

123.  Within the time allowed by ORS 30.275, on or about June 4, 2018, plaintiff presented a formal written notice of his claims to the West Linn Defendants for damages arising out of the facts and circumstances detailed above.

Page 21 – SECOND AMENDED COMPLAINT

124.  As a direct and proximate cause of the West Linn Defendants' false statements, plaintiff has suffered economic losses including, but not limited to, lost income from future employment and impairment of future earning capacity, plus prejudgment interest, for which plaintiff seeks compensation in an amount to be proven at trial.

125.  As a direct and proximate cause of the West Linn Defendants' conduct, plaintiff has suffered and will continue to suffer noneconomic damages in the form of injury to his reputation, emotional distress, anxiety, humiliation and embarrassment, and is entitled to an award of compensatory damages in the amount of $2,000,000.

### EIGHTH CLAIM FOR RELIEF
### Violation of ORS 18 U.S.C. § 2511 – Wiretapping
### Against all Defendants

126.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 127.

127.  On or about February 25, 2017, the West Linn defendants ensured that conversations occurring at the Portland business involving plaintiff and others were surreptitiously monitored and recorded in violation of 18 U.S.C. § 2511(1)(a).

128.  Specifically, using an app known as "Swann View," the West Linn Defendants employed the surveillance equipment and active assistance of civilian personnel to receive real-time updates regarding the unlawful audio surveillance of Mr. Fesser's office.

129.  The West Linn Defendants intentionally intercepted conversations between plaintiff and third parties and, with the equipment and assistance of civilian personnel, ensured that there were recordings of these conversations.

130.  The West Linn Defendants intercepted plaintiff's conversations with third parties without plaintiff's knowledge or consent, and without the knowledge or consent of the third parties to whom plaintiff spoke, for the purpose of committing criminal and/or tortious act in violation of federal and state law.

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON., SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

131.  The West Linn Defendants disclosed and used the conversations and recordings in their efforts to support a trumped-up criminal investigation of plaintiff, in violation of 18 U.S.C. § 2511(1)(c) and (d).

132.  Under 18 U.S.C. § 2520(c)(2), plaintiff is entitled to damages in the amount of the greater of the sum of actual damages suffered by plaintiff, in an amount to be determined at trial, or statutory damages of $10,000.

133.  Because the West Linn Defendants engaged in egregious and malicious conduct and, in so doing, acted willfully, knowingly, intentionally, or with reckless disregard for plaintiff's constitutional and statutory rights, plaintiff reserves the right to move the Court to amend the complaint to seek an award of punitive damages against the West Linn Defendants for the purpose of punishing these defendants and to deter them and others from such conduct in the future, as authorized by 18 U.S.C. § 2520(b)(2).

134.  Plaintiff is entitled to recover his reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 2520(b)(3).

## NINTH CLAIM FOR RELIEF
### Violation of ORS 133.721 *et seq.* – Unlawful Interception and Disclosure
### Against all Defendants

135.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 136.

136.  The West Linn Defendants intentionally intercepted conversations between plaintiff and third parties and, with the equipment and assistance of civilian personnel, ensured that there were recordings of these conversations.

137.  The West Linn Defendants intercepted plaintiff's conversations without a warrant or application for an ex parte order, in violation of ORS 133.724, and in further violation of ORS 165.543.

138.  The West Linn Defendants intercepted plaintiff's conversations with third parties without plaintiff's knowledge or consent, and without the knowledge or consent of any of the

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON., SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

third parties to whom plaintiff spoke, for the purpose of committing criminal and/or tortious act in violation of federal and state law.

139.  The West Linn Defendants disclosed and used the conversations and recordings in their efforts to support a trumped-up criminal investigation of plaintiff, in violation of ORS 133.737(4).

140.  Within the time allowed by ORS 30.275, on or about June 4, 2018, plaintiff presented a formal written notice of his claims to the West Linn Defendants for damages arising out of the facts and circumstances detailed above.

141.  Plaintiff is entitled to a declaration that the West Linn Defendants violated ORS 133.724 and 133.737 by unlawfully intercepting, disclosing, and using his private conversations.

142.  Under ORS 133.739(1)(a), plaintiff is entitled to actual damages incurred as a result of the West Linn Defendants' unlawful interception and disclosure of his conversations, but not less than damages computed at the rate of $100 per day for each day of violation or $1,000, whichever is greater.

143.  Because the West Linn Defendants engaged in egregious and malicious conduct and, in so doing, acted willfully, knowingly, intentionally, or with reckless disregard for plaintiff's constitutional and statutory rights, plaintiff reserves the right to move the Court to amend the complaint to seek an award of punitive damages against the West Linn Defendants for the purpose of punishing these defendants and to deter them and others from such conduct in the future, as authorized by ORS 133.739(1)(b).

144.  Plaintiff is entitled to recover his reasonable attorneys' fees and costs as authorized by ORS 133.739(5).

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON., SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

## TENTH CLAIM FOR RELIEF
### Invasion of Privacy
### Against all Defendants

145.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 146.

146.  The West Linn Defendants participated in an unlawful surveillance operation without a warrant or probable cause outside of their jurisdiction, wherein plaintiff's conversations with third parties were intercepted and recorded without his knowledge or consent.

147.  The West Linn Defendants also seized plaintiff's smartphone and told him they would hack into it.

148.  The West Linn Defendants also took plaintiff's attorney-client privileged communications and, on information and belief, gave them to a third party.

149.  In conducting their surveillance and investigation of plaintiff, the West Linn Defendants publicly placed plaintiff in a false light, including by claiming that he was stealing from his employer.

150.  The West Linn Defendants' conduct was objectionable to plaintiff and would have been objectionable to any reasonable person of ordinary sensibilities, in that the West Linn Defendants' actions were done without plaintiff's consent and in an offensive manner.

151.  The West Linn Defendants intruded into plaintiff's conversations and personal belongings, which were private and entitled to be private, which constitutes an invasion into plaintiff's solitude, seclusion, and right to privacy that he did not consent to.

152.  The conduct of the West Linn Defendants described herein was done for the purpose of causing plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.

153.  Within the time allowed by ORS 30.275, on or about June 4, 2018, plaintiff presented a formal written notice of his claims to the West Linn Defendants for damages arising out of the facts and circumstances detailed above.

Page 25 – SECOND AMENDED COMPLAINT

154.  As a direct and proximate result of the West Linn Defendants' conduct, plaintiff was caused to incur severe emotional distress, mental anguish, degradation, and embarrassment and is entitled to an award of compensatory damages in the amount of $2,000,000.

WHEREFORE, plaintiff prays for judgment against defendants as follows:

1.    On Plaintiff's Second Claim for Relief:

    a.    A declaration that the West Linn Defendants violated 42 U.S.C. § 1981 by depriving plaintiff of his right to make and enforce contracts and acted on the basis of plaintiff's race to deprive him of the full and equal benefit of the law;

    b.    An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial, but not less than $500,000;

    c.    An award of noneconomic damages to compensate plaintiff for injury to his reputation, emotional distress, anxiety, humiliation, and embarrassment in the amount of $2,000,000;

    d.    An award of punitive damages upon motion; and

    e.    Plaintiff's attorneys' fees, expert fees and costs incurred herein.

2.    On Plaintiff's Second Claim for Relief:

    a.    A declaration that the West Linn Defendants violated 42 U.S.C. § 1983 by violating plaintiff's rights under the Fourth and Fourteenth Amendments;

    b.    An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial, but not less than $500,000;

    c.    An award of noneconomic damages to compensate plaintiff for injury to his reputation, emotional distress, anxiety, humiliation, and embarrassment in the amount of $2,000,000;

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON, SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

        c.        An award of punitive damages against defendants upon motion; and

        d.        Plaintiff's attorneys' fees, expert fees and costs incurred herein.

3.        On Plaintiff's Third Claim for Relief:

        a.        A declaration that the West Linn Defendants unlawfully arrested plaintiff without a warrant or probable cause; and

        b.        An award of noneconomic damages to compensate plaintiff for injury to his reputation, emotional distress, anxiety, humiliation, and embarrassment in the amount of $2,000,000.

4.        On Plaintiff's Fourth Claim for Relief:

        a.        A declaration that the West Linn Defendants unlawfully detained and incarcerated plaintiff without a warrant or probable cause; and

        b.        An award of noneconomic damages to compensate plaintiff for injury to his reputation, emotional distress, anxiety, humiliation, and embarrassment in the amount of $2,000,000.

5.        On Plaintiff's Fifth Claim for Relief:

        a.        An award of noneconomic damages to compensate plaintiff for injury to his reputation, emotional distress, anxiety, humiliation, and embarrassment in the amount of $2,000,000.

6.        On Plaintiff's Sixth Claim for Relief:

        a.        An award of noneconomic damages to compensate plaintiff for injury to his reputation, emotional distress, anxiety, humiliation, and embarrassment in the amount of $2,000,000.

7.        On Plaintiff's Seventh Claim for Relief:

        a.        An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial; and

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON, SUITE 516
PORTLAND, OREGON 97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

      c.      An award of noneconomic damages to compensate plaintiff for injury to his reputation, emotional distress, anxiety, humiliation, and embarrassment in the amount of $2,000,000.

8.      On Plaintiff's Eighth Claim for Relief:

      a.      An award of damages in the amount of the greater of the sum of actual damages suffered by plaintiff, in an amount to be determined at trial, or statutory damages of whichever is the greater of $100 per day for each day of violation or $10,000.00;

      b.      An award of punitive damages against defendants upon motion; and

      c.      Plaintiff's attorneys' fees and costs incurred herein.

9.      On Plaintiff's Ninth Claim for Relief:

      a.      An award of damages incurred as a result of the West Linn Defendants' unlawful interception and disclosure of his conversations, but not less than damages computed at the rate of $100 per day for each day of violation or $1,000, whichever is greater; and

      c.      Plaintiff's attorneys' fees and costs incurred herein.

10.      On Plaintiff's Tenth Claim for Relief:

      a.      An award of noneconomic damages to compensate plaintiff for injury to his reputation, emotional distress, anxiety, humiliation, and embarrassment in the amount of $2,000,000.

11.      Any further or alternative relief in favor of plaintiff that the Court deems appropriate.

///

///

///

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON, SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)

12.    Plaintiff demands a jury trial.

DATED:  January 7, 2020                    BUCHANAN ANGELI ALTSCHUL &
                                           SULLIVAN LLP

                                           s/ Paul Buchanan
                                           Paul Buchanan, OSB 940551
                                           paul@baaslaw.com
                                           Dezi Robb, OSB 151777
                                           dezi@baaslaw.com
                                           Attorneys for Plaintiff

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
921 SW WASHINGTON,, SUITE 516
PORTLAND, OREGON  97205
(503) 974-5015
(971) 230-0337 (FACSIMILE)